# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:16-bk-20006 |
| JAMES F. HUMPHREYS & ASSOCIATES, L.C. | CHAPTER 11 |
| | JUDGE FRANK W. VOLK |
| Debtor. | |

## MEMORANDUM OPINION AND ORDER

Pending is the Application of Debtor James F. Humphreys & Associates, L.C., ("the Firm") to Employ and Retain Bowles Rice LLP ("Bowles Rice") as Local Counsel for the Debtor-in-Possession Pursuant to 11 U.S.C. §§ 327(a) and 329, Effective as of the Petition Date, filed January 13, 2016 ("Application") (Doc. 3).

On February 10, 2016, the Court received from Tammy Litton, as Administrator of the Estate of Conard Litton, and putative intervenor Harvey Brightwell (together the "Objectors"), a combined motion to intervene and objection to the Application. On February 19, 2016, the Firm replied. On February 22, 2016, the Court received the Objectors' surreply.[1] On February 23, 2016, the Court held a hearing and entertained argument. Following argument, the Court stated its intention to take the matter under advisement unless counsel desired to offer anything further. Nothing further was offered. The matter is submitted for decision.

---

[1] The Court **ORDERS** that the Objectors' motion for leave to file a "short reply," which is in substance a surreply, be, and hereby is, **GRANTED**. It is further **ORDERED** that the motion to intervene, to the extent necessary, and only for the purposes of prosecuting the objection, be, and hereby is, **GRANTED.**

I.

The Objectors' primary concern is that their confidential client information, along with that of similarly situated individuals, may be put at risk if the Application is granted. The difficulty is that the statute and rules upon which they rely do not contemplate a situation such as that presented here, namely, a proposed section 327(a) professional accused of a potential conflict of interest by a non-client, when both the debtor in possession and the proposed professional's present and former clients harbor no conflict concerns.

While the Objectors challenge is misplaced, their concerns are well-taken respecting the inviolability of their confidential information. The task for the Court is to fashion a result that preserves the debtor-in-possession's discretionary choice under section 327(a), while simultaneously protecting the interests of those non-clients who could possibly be prejudiced by that choice.

II.

On January 13, 2016 (the "Petition Date"), the Firm voluntarily sought relief under Chapter 11 of the Bankruptcy Code. Pursuant to 11 U.S.C. §§ 327(a) and 329 of the Code, the Firm seeks to employ Bowles Rice as West Virginia local counsel to assist the law firm of Tucker Arensberg, P.C. ("Tucker Arensberg"), effective as of the Petition Date. The Firm desires Bowles Rice's assistance in view of its experience in bankruptcy and commercial matters and the qualifications of its members to perform the work required herein.

In general, it is expected that Bowles Rice would perform the following professional services:

1. To act as "local counsel" for Tucker Arensberg;

2. To assist Tucker Arensberg in the steering of the Firm's case;

3. To assist Tucker Arensberg in the preparation and filing of documents and the appearances at matters and proceedings;

4. To represent the Firm as local counsel in adversary proceedings; and

5. To assist Tucker Arensberg in performing all other necessary legal services and rendering legal advice to the Firm.

The Firm offers its belief that Bowles Rice represents no other entity in connection with this case and is "disinterested," as defined in 11 U.S.C. § 101(14), and holds no interest adverse to the Firm's interests with respect to the matters for which Bowles Rice would be employed.

The Objectors oppose the Application. Tammy Litton is the administrator of Conard Litton's estate. The decedent was apparently afflicted with an asbestos-related condition and retained the Firm to file claims on his behalf. Ms. Litton asserts those claims were never filed. Harvey Brightwell is a listed creditor and a former joint client of the Firm and the Calwell practice. He has a pending -- but essentially settled -- claim against Monsanto in certain litigation pending in the Circuit Court of Putnam County. Mr. Brightwell asserts that the Firm holds a contingent claim against the gross proceeds of his case pursuant to a termination agreement which ended his joint representation by the Firm and the Calwell practice, the latter of which still represents his interests in the case.

The Objectors assert that Bowles Rice labors under an insurmountable conflict of interest that precludes the Application from being granted. It notes that Bowles Rice represents certain asbestos litigation defendants. Bowles Rice also represents Monsanto in the Circuit Court

3

of Putnam County litigation. Specifically, the Objectors distill their respective disputations as follows:

> Tammy Litton objects to the retention of Bowles Rice as local counsel for . . . [the Firm] on the grounds that the representation of both the . . . [Firm] and other entities with asbestos related claims against them, some of which are represented by the . . . [the Firm], places Bowles Rice in an irreparable [sic] conflict of interest. Bowles Rice may come into information from the . . . [Firm] regarding trial strategy, settlement strategy, case value, and other information which could be used against . . . [the Firm's] own clients, former clients with present claims, and future clients.
>
> . . . .
>
> The Monsanto personal injury settlement [affecting Mr. Brightwell] is not finalized. Bowles Rice has over 100 releases to prepare. The wrongful death orders, where required, have not been entered. Approximately 60 cases remain to be approved by the Centers for Medicare Services (CMS). Finally, the submission of either dismissal orders or releases necessary to finalize the settlement and trigger the payment of the contingent fees has not been completed. Monsanto retains until the settlement is final the right to reject any of the offered releases. Hence, on the one hand Bowles Rice has the duty to object to the payment of the money if Monsanto contends that the settlement terms have not been satisfied, but on the other hand has the duty to pursue the settlement proceeds on behalf of the . . . [Firm], including if necessary vigorously arguing the settlement was satisfied on behalf of the . . . [Firm] in the event a dispute arises whether the settlement was satisfied.
>
> Even though the . . . [Firm] is no longer actively representing the objector, he [sic] has intimate knowledge of many aspects of the case and an interest in the finalization of the settlement which may be contrary to the interests of Monsanto. The . . . [Firm] is believed to be in possession of documents, mental impressions, opinions, and other forms of attorney work product, which should remain confidential and not be shared with Monsanto's lawyers.

(Objec. at 2-3). The Objectors' overriding concern appears to be that Bowles Rice may access confidential client information in the Firm's possession.

## II.

**A.     Governing Law**

Title 11 U.S.C. § 327 covers the employment of attorneys and other professionals. It provides pertinently as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). The trustee, or a debtor in possession as here, is generally given a wide berth in selecting a lawyer under section 327(a). *Kanter v. Robertson*, 102 F.2d 92, 93 (4th Cir. 1939); *see In re Heck's, Inc.*, 83 B.R. 410, 416 (S.D. W. Va. 1988) (Copenhaver, D.J.) ("Only in the rarest cases should the [client] be deprived of selecting his own counsel . . . .") (quoting *Kanter*, 102 F.2d at 93).

As the text indicates, however, section 327 cabins this discretion. For example, in subsection (a), one sees that proposed lawyers and professionals must (1) be disinterested and (2) not hold or represent interests adverse to the estate. *In re Harold & Williams Dev't Co.*, 977 F.2d 906, 909 (4th Cir.1992). Sections 101(14)(A) and (B) define the term "disinterested" as a lawyer or other professional who is not a creditor, equity security holder or insider, or -- either presently or within 2 years before the petition date -- a director, officer, or employee of the debtor. 11 U.S.C. § 101(14)(A), (B). Section 101(14)(C) further proscribes the appointment of one with an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14)(C).

To aid practical application, an adverse interest is generally understood as being present when the proposed professional is compromised by

> (1) [the] . . . possess[ion] or assert[ion of] any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) [the] . . . possess[ion of] a predisposition under circumstances that render such a bias against the estate.

*In re Empire State Conglomerates, Inc.*, No. 15-10061 (SMB), 2016 WL 745478 (Bankr. S.D.N.Y. Feb. 24, 2016) (citing cases); *see also In re Johnson*, 312 B.R. 810, 819, n.7 (E.D. Va. 2004) (collecting cases); *see also* 9 Hon. William L. Norton Jr. & William L. Norton III, *Norton Bankr. L. & Prac. 3d* § 172:7 (3rd ed. elec. 2016). An important corollary, however, is that "[t]he test [for the presence of adverse interests] is not retrospective; courts only examine present interests when determining whether a party has an adverse interest." *In re Project Orange Assocs., LLC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010).

**B.     Analysis**

Reduced to its essence, the Objectors assert that Bowles Rice is not disinterested inasmuch as (1) it represents clients against whom suit was brought by the Firm on the Objectors' and others behalves, and (2) it harbors an interest in accessing confidential information redounding to those plaintiffs' litigation detriment. The Objectors concerns about the disinterestedness of Bowles Rice, however, are all contingent upon future events that seem -- at best -- unlikely to ripen into reality. For example, the Objectors fear that "Bowles Rice [which represents defendants in asbestos litigation] *may come into information* from the . . . [Firm] regarding [the Litton and related matters'] trial strategy, settlement strategy, case value, and other information which could be used against . . . [the Firm's] own clients, former clients with present claims, and future clients." (Objec. at 2 (emphasis added)). They additionally theorize a veritable parade of horrors "*in the event* a

6

dispute arises whether the settlement [in the Brightwell and related matters is] . . . satisfied." (*Id.* at 3 (emphasis added)). They add as to the Brightwell matter that, "Even though the . . . [the Firm] is *no longer actively representing the objector*, he [sic] has intimate knowledge of many aspects of the case and an interest in the finalization of the settlement which may be contrary to the interests of Monsanto." (*Id.* (emphasis added)). The Objectors' concerns are speculative at this point.

While it is asserted that Bowles Rice has an interest materially adverse to the estate, there appears little to no likelihood that it has (1) an economic interest tending to lessen the value of the estate, (2) any interest that would cause a dispute in which the estate is a rival claimant, or (3) a predisposition giving rise to a bias against the estate. While courts have often been troubled by either actual or potential conflicts of interest in this area, one court has noted as follows:

> A more recent trend elides the distinction and focuses on the concerns of *divided loyalties and affected judgments*. Thus, the professional has a disabling conflict if it has "either a *meaningful incentive* to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *In re Martin*, 817 F.2d at 180; *accord In re Leslie Fay Cos.*, 175 B.R. at 533. Disqualification is appropriate "if it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation." *In re Leslie Fay Cos.*, 175 B.R. at 533 . . . .

*In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998). The Court discerns no reasonable basis, at this point, to conclude that Bowles Rice has, or will develop, an interest materially adverse to the estate.[2] In fact, just the opposite appears to be the case. The Objectors' reliance upon section 327(a) appears misplaced.

---

[2] The Objectors also rely upon the West Virginia Rules of Professional Conduct. Specifically, they assert that representation of the Firm here by Bowles Rice would, under Rule 1.7(a)(2), pose:

> a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

7

In sum, it is fair to say that the governing statute and rules do not explicitly contemplate the unusual situation here involved. Although the Objectors' legal arguments do not give rise to Bowles Rice's disqualification under the specific provisions relied upon, the Objectors' confidentiality concerns are nevertheless substantial. It is thus the Firm's primary and nontransferable obligation to guard the secrets of its present and former clients. The Firm, with the aid of its counsel, must avoid the possibility that Bowles Rice could inadvertently come into contact with the type of confidential information identified by the Objectors during, for example, the defense of an adversary proceeding involving one or more of the vast sea of creditors on the matrix.

To avoid that prospect from reaching fruition, the Court would expect the Firm, and Mr. Humphreys personally, to plan appropriately and take the steps necessary to discharge the obligations imposed upon them by Rule 1.9(c) and Rule 1.6(a) and (c), cognizant of any applicable safe harbors found in subdivision (b). The development of that plan and its necessary steps should be undertaken with the assistance of both Tucker Arensberg and Bowles Rice. With that proviso, it is **ORDERED** that the Application be, and hereby is, **GRANTED.**

The Clerk is directed to serve a copy of this written opinion and order on counsel of record for the Firm and the Objectors, along with those entities on the creditor matrix.

DATE: March 3, 2016

*Frank W. Volk*
Frank W. Volk
United States Bankruptcy Judge

---

W. Va. R. Prof. Cond. 1.7(a)(2). Assuming the Objectors could muster the necessary affected "clients," they simply cannot identify the "significant risk" necessary to invoke the proscription. Reliance upon Rule 1.9 is similarly misplaced. That provision, like Rule 1.7(a) and section 327, simply does not contemplate the distinct setting here involved.