Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

| | |
|---|---|
| IN RE:<br><br>JAMES F. HUMPHREYS<br>& ASSOCIATES, L.C.<br><br>Debtor. | CASE NO. 2:16-bk-20006<br><br>CHAPTER 11<br><br>JUDGE FRANK W. VOLK |
| IRA HORNE and<br>MAVIS HORNE,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES HUMPHREYS and<br>JAMES F. HUMPHREYS &<br>ASSOCIATES, L.C.,<br><br>Defendants. | ADVERSARY PROCEEDING NO.<br>2:16-ap-2004 |

**MEMORANDUM OPINION AND ORDER**
**RESPECTING IRA AND MAVIS HORNE'S**
**MOTIONS TO REMAND AND TO LIFT AUTOMATIC STAY**

Pending are the motion to remand filed in the adversary proceeding by Plaintiffs Ira and Mavis Horne [Dckt. 4] and their motion to lift the automatic stay filed in the main case [Dckt. 36].

On February 9, 2016, the Court heard argument on the motions. The following day, a minute order was entered directing the parties to file a Joint Stipulation of Fact on or before February 20, 2016. The Court noted that it was "especially interested in potential insurance policies that may cover the time period in question, as more fully stated from the bench." (Ord. at 1). The February 10, 2016, order additionally directed supplemental briefing, with the Hornes'

opening supplemental brief due on or before February 27, 2016, the response thereto of the Defendants James Humphreys and James F. Humphreys & Associates, L.C. (the "Firm" and, collectively the "AP Defendants") due on or before March 8, 2016, and any reply due on or before March 15, 2016. Interested Party Liberty Insurance Underwriters, Inc. ("Liberty"), was later given leave to file a separate brief concerning the issues under consideration.[1]

## I.

Mr. and Mrs. Horne are, respectively, 80 and 84 years old. They reside in Tazewell County, Virginia. The Firm is a West Virginia legal corporation formed in 1996. Mr. Humphreys is the President and sole owner of the Firm.

On July 8, 2001, the area where the Hornes reside was deluged. In January 2002, in an effort to recover for the losses they suffered, the Hornes claim they retained the Firm. They summarize the matter as follows:

> The Hornes initially received correspondence from the Defendant law firm confirming that the Humphreys firm had decided to take the Hornes' case and later that a Complaint had been filed on their behalf. The Hornes also received newsletters from the firm about the status of their case before the West Virginia Supreme Court of Appeals, and other correspondence from the firm about their case. It turned out, however, that all correspondence and "updates" regarding the flood cases were false as to the Hornes, although the Hornes were unaware of that. A Complaint was never filed on their behalf, anywhere, and the Virginia statute of limitations applicable to the underlying 2001 flood claims expired at least by July 8, 2006, without being preserved in any manner by the Defendants.

(Memo. in Supp. at 6).

---

[1] The Court treats the submissions from Liberty as akin to permissive *amicus* filings, given the potential estate impact of the Firm's insurance coverage, if any. Even the AP Defendants assert that the Court has no such coverage dispute presently before it. (AP Defs.' Resp. to Lib.'s Supp. Br. at 5 ("issues of Liberty Insurance's coverage obligations are not before this Court."). Liberty has not been permitted to intervene in this action and, consequently, lacks standing.

At no time did the Hornes ever communicate personally with Mr. Humphreys. In June 2009, the same area was again afflicted by severe flooding. On November 5, 2009, the stipulation reflects that an unnamed lawyer employed by the Firm, along with lawyer Timothy Barber, visited the Hornes. The Hornes contend that they had several potential claims under Virginia law which should have been pursued by the AP Defendants for which they may have recovered economic, non-economic, and punitive damages.[2] No lawsuit was ever filed on the Hornes' behalf for either the 2001 or 2009 flood claims.

In August 2014, present counsel for the Hornes in this action contacted the AP Defendants concerning their putative representation of the Hornes. They informed the AP Defendants that present counsel now also represented another twenty residents of Tazewell County, Virginia, apparently respecting other allegedly flood-related malpractice claims.

On September 11, 2014, the Hornes instituted an action against Mr. Humphreys and the Firm in the Circuit Court of Kanawha County ("State Court Action"). On November 24, 2014, the Supreme Court of Appeals of West Virginia specially assigned the matter to the Honorable Jack Alsop of the Fourteenth Judicial Circuit, after the judicial officers in the Circuit Court of Kanawha County recused themselves. Judge Alsop is a twenty-year veteran of the state circuit bench. On December 9, 2014, the Hornes filed an amended complaint alleging claims for

---

[2] The Hornes detail their allegations concerning the visit in their Memorandum in Support. They assert as follows:

> On November 3, 2009, Humphreys firm paralegal Lisa Knight . . . informed Mr. Horne that "two of the attorneys on his case would like to stop by on Thursday at 1:30 to discuss his case." On approximately November 5, 2009, outside counsel Timothy Barber and Cindy Fernald, the firm's managing administrative attorney at that time, visited the Hornes at their home in Tazewell, Virginia. This visit was a key part of the cover-up, as it served to further mislead Mr. Horne, and through him Mrs. Horne, into believing that their lawyers were working on their flood case.

(Memo. in Supp. at 8).

negligence, breach of contract, breach of fiduciary duty, fraud and misrepresentation, and spoliation of evidence. For example, the Hornes assert as follows respecting the alleged fraud they believe was undertaken by the Firm:

> The lawyers in the Humphreys firm fretted internally about the failure of the Motion to Sever and the missed statute of limitations, and discussed additional ways to avoid liability for allowing the statute of limitations to expire. To illustrate, Lisa Knight, one of the Humphreys firm's paralegals who was aware of the missed statute of limitations for the Virginia flood victims, even joked (purportedly) that the firm should "burn the files" and "delete" any record of the Hornes as clients in their case management system, pretending that they never represented the Hornes. Meanwhile, the then managing attorney for the firm, David Cecil, was trying to establish through outside legal research efforts that the flood claims could not have been pursued successfully in the first place, due to an argument that the Tazewell County Airport Authority was immune from suit, which the Plaintiffs have refuted.

(Memo. in Supp. at 7). The Hornes seek both compensatory and punitive damages.

Judge Alsop originally set the case for trial on December 1, 2015. The schedule was modified in September 2015 as follows:

| Discovery deadline | November 23, 2015 |
| Pretrial motions | December 30, 2015 |
| Responses | January 11, 2016 |
| Pretrial conference and motions hearing | January 15, 2016 |
| Jury trial | February 23, 2016 |

On December 16, 2014, Mr. Humphreys and the Firm, while denying any liability, filed an offer of judgment in the amount of $200,000. Mr. Humphreys and the Firm asserted the amount resided at "the high-end of the economic damages Plaintiffs' [present] counsel alleged they suffered in his pre-suit demand letter." (Defs.' Resp. Br. and Objec. at 9). The offer of judgment has since expired. On November 25, 2015, Judge Alsop extended the parties' discovery deadline to December 23, 2015, respecting certain expert witness depositions and defense financial information. According to the Hornes, the matter has undergone "an extensive discovery process, with dozens of depositions, including numerous fact witnesses with knowledge of the

4

circumstances, as well as nine experts designated by the parties (five for the Plaintiffs and four for the Defendants)."[3] (Memo. in Supp. at 2).

On December 29, 2015, Liberty moved to intervene in the State Court Action and for declaratory relief. It interposed a host of defenses as to the existence and extent of insurance coverage for the Hornes' claims. Liberty's involvement stems from a Lawyers Professional Liability Policy the Firm purchased with an initial coverage period spanning August 2, 2002, to August 2, 2003. The Policy was renewed for two additional periods running from August 2, 2003, to August 2, 2005. The liability limits of the Policy running from August 2, 2004, through August 2, 2005 are $5,000,000.00 for each claim, and $5,000,000.00 in the aggregate. Each claim is subject to a $25,000.00 deductible. Claim expenses, such as attorney fees, reduce the limits of liability and impact the deductible. The Policy additionally excludes coverage for punitive damages, fraudulent conduct, and deliberate wrongful acts or omissions.

While the Policy reserves to Liberty the right and duty to defend any covered claim, it correspondingly obliges the policyholder to "give [Liberty] written notice of any claim(s) or potential claim(s) made against [the policyholder] as soon as practicable but not later than sixty (60) days after expiration of the policy period or an extended reporting period, if applicable. In the event suit is brought against [policyholder], [policyholder] must immediately forward to [Liberty] every demand, notice, summons, complaint or other process received directly or by [policyholder's] representatives." (Jt. Stip. ¶ 46).

The Policy was cancelled effective August 2, 2005. The Firm submitted the Summons and Complaint in the State Court Action to Liberty seven months after the State Court

---

[3] In their response to the motion to lift stay, Mr. Humphreys and the Firm assert that discovery is incomplete. That assertion appears inaccurate based upon an objective review of the schedule in the State Court Action.

5

Action was filed. Liberty has provided a defense to Mr. Humphreys and the Firm in the State Court Action under a reservation of rights.

On December 30, 2015, the Firm and Mr. Humphreys moved for summary judgment and tendered additional motion practice, all of which were set for the January 15, 2016, pretrial conference before Judge Alsop, along with Liberty's motion to intervene. As of January 14, 2016, there were ten outstanding motions and twenty contested issues of law pending for disposition by Judge Alsop at the pretrial conference.

On January 13, 2016, the Hornes filed their pretrial memorandum.[4] That same day, the Firm petitioned here for relief under Chapter 11. On January 13, 2016, Mr. Humphreys and the Firm filed a Notice of Bankruptcy Filing in the State Court Action and stated the effect of the stay imposed by 11 U.S.C. § 362. On January 13, 2016, the Hornes formally noticed their intention to proceed to trial in the State Court Action, asserting that the case was not stayed as to Mr. Humphreys. On January 14, 2016, Mr. Humphreys and the Firm removed the State Court Action, giving rise to this adversary proceeding.

On January 15, 2016, Judge Alsop and the parties convened for the pretrial conference. The trial date was held pending a possible remand. Judge Alsop has now continued the trial generally. On January 18, 2016, the Hornes moved in the main case to lift the automatic

---

[4] Liberty, which is representing the AP Defendants, notes as follows concerning the rapidly unfolding events in the State Court Action prior to removal:

> In the instant matter, LIUI possesses policy defenses to any claim for coverage for attorneys' fees, for fraud and for punitive damages, as well as for alleged acts of wrongful conduct occurring before August 2, 2002 or after August 2, 2005. Those defenses were being pursued in the State Court Action which was within weeks of a final adjudication.

(Lib.'s Op. Br. at 9). Liberty additionally asserts that it "is not prepared, at this time, to consent to this Court handling the coverage matters." (*Id.*). As the AP Defendants concede, Liberty is well-steeped in the defense and progress of the State Court Action: "As required by the insurance policy issued by LIUI to Debtor, [the AP] *Defendants had closely coordinated their defense strategy with LIUI.*" (AP Defs.' Resp. to Lib.'s Op. Br. at 2 (emphasis added)).

stay. That same day, the Hornes moved to remand.[5] Liberty joins in the motion to remand. While the initial briefing was opaque on the matter, it is now stipulated that removal is based solely upon the State Court Action being putatively "related to" the Firm's bankruptcy under 28 U.S.C. § 1334(b). On February 4, 2016, the Firm moved to withdraw the reference but did not seek a stay in this Court.

After the briefing in this matter concluded, the Hornes, on May 6, 2016, filed proofs of claim in the Firm's bankruptcy case. The proofs of claim are transparently based upon the malpractice- and fraud-related claims asserted in the State Court Action. On May 11, 2016, the Firm filed a supplemental brief, without leave of court, entitled "Notice of Plaintiff's Effective Waiver of Right to Jury Trial." The Firm asserts as follows:

> The law is well settled that by filing the proofs of claim, parties are deemed to have brought themselves within the equitable jurisdiction of the bankruptcy courts and have waived and/or are not entitled to a jury trial.

(Not. at 2). In response, the Hornes noted, *inter alia*, as follows: "[T]he Debtor apparently forgets that Mr. Humphreys — the Debtor's principal — is a co-defendant in the State Court Action, and the so called 'waiver' has no effect on the jury trial as against him." (Resp. at 2). As is apparent from the discussion that follows, the late filings resulted in a considerable change in posture of the issues originally briefed for decision, despite the fact that the parties, at the time the briefing concluded prior to May, had submitted approximately 650 pages of briefing respecting the motions to remand and to lift stay.

---

[5] In their memorandum in support, the Hornes stated emphatically their belief that "the Chapter 11 filing on behalf of the law firm Defendant is an opportunistic, and improper, effort to derail the case filed by the Hornes, seeking damages for clear (and admitted) legal malpractice, as well as egregious and irrefutable fraudulent conduct in covering it up." (Memo. in Supp. at 4). The Hornes appear to concede that jurisdiction exists under at least one of the grounds enumerated in 28 U.S.C. § 1334(b). Mr. Humphreys and the Firm only availed themselves of the statutory removal mechanism and Code-based remedies sanctioned by Congress.

7

## II.

A. **Effect of the Hornes' Proofs of Claim**

It appears that binding case law and multiple commentators side with the Firm respecting the effect of the Hornes' recent proofs of claim:

> On November 13, 1990, the Supreme Court determined that a creditor who files a proof of claim against the bankruptcy estate has waived its right to jury trial on a preference claim brought by the estate. Accordingly, a creditor filing a claim in the bankruptcy will risk waiver of its jury trial rights with respect to any litigation concerning that creditor's claim. The specter of "jurisdiction by ambush" raises its ugly head once again -- with vigor.

Thomas J. Salerno *et al.*, *Advanced Chap. Eleven Bankr. Prac.* § 3.48 (2016 elec.) (citations omitted); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59-60 (1989); *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 125 (4th Cir. 1993) ("It is clear that by filing a proof of claim against a bankruptcy estate, a creditor 'triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power.'"); *In re Hooker Investments, Inc.*, 937 F.2d 833 (2d Cir. 1991) (Creditor must choose between abiding by bar date order or losing right to jury trial); 2 Howard J. Steinberg, *Bankruptcy Litigation* § 8:21 (2nd ed. 2015) ("The filing of a proof of claim not only results in a loss of a right to a jury trial on the claims set forth in the proof of claim, it also results in a loss of a right to a jury trial with respect to claims asserted against that creditor to the extent they affect the allowance or priority of the claim.").

Based upon these authorities, the Court concludes that the Hornes have, by filing their claims, waived their Seventh Amendment right to a jury trial in the State Court Action against the Firm. They have not, however, done so with respect to the State Court Action claims pled against Mr. Humphreys.

8

B.     **The Standard for, and Analysis of, "Related-To" Jurisdiction**

Title 28 U.S.C. § 1334(b) governs subject matter jurisdiction in this setting and provides pertinently as follows:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). Title 28 U.S.C. 1452(a) provides further as follows:

> A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

Binding precedent provides significant guidance concerning what type of action qualifies as a "related to" case under title 11. In *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), the Supreme Court observed as follows:

> "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," and . . . the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.

*Id.* at 308 (quoting, in part, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

Following *Celotex*, our court of appeals discussed in greater detail the nature of a "related to" proceeding:

> A civil case filed in a district court is related to a case in bankruptcy if the outcome in the civil case "*could conceivably have any effect on the estate being administered in bankruptcy* . . . if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Celotex*, 514 U.S. at 308, n. 6, 115 S.Ct. 1493 (quoting *Pacor*, 743 F.2d at 994) (internal quotations omitted) (italics in *Pacor*).

9

> This court has adopted the . . . related to test [of *Pacor*] and has held that a district court, "and derivatively the Bankruptcy court" has jurisdiction over an action related to a bankruptcy case "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir.), *cert. denied*, 522 U.S. 969, 118 S.Ct. 417, 139 L.Ed.2d 319 (1997) (quoting *Pacor*, 743 F.2d at 994 (internal quotation marks omitted)). The Supreme Court gave the following as an example of a civil case related to a bankruptcy case: "suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 307 n. 5, 115 S.Ct. 1493 (citing 1 Collier on Bankruptcy ¶ 3.01[1][c][iv] at 3-28 (15th ed. 1994)). Notably, as is the case here, a related to case need not necessarily be against the debtor or his property. Nevertheless, the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." *Pacor*, 743 F.2d at 994. *In this circuit, a civil case is related to bankruptcy if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy."* In re Celotex Corp., 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor*, 743 F.2d at 994), *see also A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986).

*New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) (emphasis added) (alterations in original) (footnotes omitted); *Spartan Mills v. Bank of America*, 112 F.3d 1251, 1255-56 (4th Cir. 1997) (quoting *Pacor*, 743 F.2d at 994); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002 (4th Cir. 1986) ("The accepted definition of . . . 'related to' in these statutes is that declared in *Pacor* . . . .").

Removal jurisdiction here is appropriate inasmuch the Hornes' case against the Firm could have an effect on the estate. It is thus "related to" the Firm's case under title 11.

**C.     The Standards for, and Analysis of, Abstention and Remand**

Unlike many bases for federal subject matter jurisdiction, neither the district court nor the bankruptcy court are compelled to exercise their power to adjudicate a dispute properly

before them under § 1334(b). The dual means for jurisprudentially surrendering jurisdiction are found in both 28 U.S.C. § 1334 and § 1425. First, § 1334(c) provides as follows:

> (c)(1) . . . [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c).[6] Second, § 1452(b) provides pertinently as follows:

> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

28 U.S.C.A. § 1452(b).

A number of factors bear on the choice between exercising and abstaining from jurisdiction. As noted by Chief Judge Chambers, "*[a]lthough virtually identical factors* are used in determining whether discretionary abstention and equitable remand should be applied, the Court recognizes that the concept of equitable remand is broader than abstention." *In re Mid–Atlantic Resources Corp.*, 283 B.R. 176, 193 (S.D. W. Va. 2002) (emphasis added) (Chambers, C.J.) (citing *Ernst & Young, LLP v. Devan (In re Merry–Go–Round Enterprises, Inc.)*, 222 B.R. 254, 256–57 (D. Md. 1998) (stating, "virtually the same (if not the identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of a remand under § 1452(b) . . . . It does not follow, however, that every remand decision

---

[6] The Hornes' have offered a misplaced plea for mandatory abstention under section 1334(c)(2). The statute provides as follows:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

11 U.S.C. § 1334(c)(2). Inasmuch as the Hornes could have, but did not, commence this action in federal court given the diversity of the parties, mandatory abstention is inapplicable.

11

must be justifiable under abstention law. Section 1452, itself, provides the criterion for orders of remand, and it broadly states that a claim may be remanded 'on any equitable ground,' *i.e.*, as interpreted by some courts, any 'appropriate ground.'" (citations omitted)).

As many as twelve factors have explicitly found their way into the analysis. When determining whether to abstain or remand, the Court considers: (1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. *See In re Webber*, No. 15-70705, 2016 WL 1407780, at *3 (Bankr. W.D. Va. Apr. 7, 2016); *In re Patterson*, No. 00–31057S, 2000 WL 34532242, at *2, *2 n.1 (Bankr. E.D. Va. Aug. 30, 2000) (citing *In re Becker*, 136 B.R. 113 (D.N.J. 1992); *Republic Reader's Serv, Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)). "Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Bricker*, 348 B.R. at 34 (quoting *In re Earned Capital Corp.*, 331 B.R. 208, 221 (Bankr. W.D. Pa. 2005), *aff'd sub nom. Geruschat v. Ernst & Young LLP*, 346 B.R. 123

12

(W.D. Pa. 2006), *aff'd sub nom. In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007)); *see also In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

First, there are effects on the efficient administration irrespective of retained jurisdiction, remand or abstention. If abstention occurs, the Hornes are permitted, unlike other tort creditors, to potentially have their case against both Mr. Humphreys and the Firm adjudicated immediately and exclusively. Mr. Humphreys and the Firm contend that will heavily impact the Firm's rights, liabilities, and options in the bankruptcy and will have an enormous effect on the size and administration of the estate. There are other beneficial estate effects that might also occur, however, depending upon the extent of the remand or abstention that is ordered. For example, if the claims as to Mr. Humphreys alone are returned to the circuit court, the verdict may entirely exonerate Mr. Humphreys and the Firm. It may also be the case that the jury would reach a partial verdict in the Hornes favor as to the fraud claims alone, which might have no estate impact at all. (*See* Hornes' Reply to Stay Lift Mot. at 5 ("[T]he Policy excludes coverage for fraudulent conduct and deliberately wrongful acts or omissions, as well as punitive damages")). One other beneficial outcome from abstention or remand is the near-certain adjudication of the coverage issues now presented by Liberty in the State Court Action. Those rulings — on issues before Judge Alsop and not the undersigned — could add a level of certainty to whether the Policy is an estate asset valued in the millions, or one with little to no value at all.[7] It is true that an adjudication of the

---

[7] Resolution of the uncertainties respecting coverage could prove quite helpful in the course of drafting, or objecting to, a proposed plan. While the Court does not pass on the accuracy of the claim, one additional assertion by the Hornes is worth considering:

> What the Debtor fails to note in its Response is that the Virginia limitations period for property damage claims is five years -- per Va. Code § 8.01-243.B -- meaning that the statute of limitations expired in July 2006, nearly a year after the Policy was cancelled. Many of the claims regarding the underlying case in the State Court Action are property damage claims. The only claim in the underlying case which would come within the Policy's term is that the Debtor failed to file a lawsuit asserting a claim for inverse condemnation, since such claims have a three year statute of limitations in Virginia. Va. Code § 8.01-246.

coverage issues before Judge Alsop may be binding from a legal standpoint as to those two plaintiffs' specific claims, but it seems well-nigh certain the effect of that ruling promises a significant impact as to the coverage issues that may be presented by the other potential, similarly situated claimants identified by the Firm and Mr. Humphreys.

Mr. Humphreys and the Firm also note that Mr. Humphreys is expected to be a significant source of funding in the Chapter 11 case. They thus assert that allowing the State Court Action to proceed against him, and to potentially impact his personal assets, could impede a successful reorganization. On the other hand, remand and abstention may contribute to the speed with which the main case is adjudicated. Again, for example, a defense verdict in the State Court Action will substantially aid the claim estimation process. *See, e.g.*, *In re Godt*, 282 B.R. 577, 585 (E.D.N.Y. 2002) (addressing a stay relief motion and noting the bankruptcy court's finding that, "[a]s to the first factor, whether relief would result in a partial or complete resolution of the issues, the Bankruptcy Court found that the litigation of the malpractice action in state court would fix the amount of the claim thereby resolving the issue."); Reply at 2 ("If [Mr. Humphreys and the Firm were exonerated of liability in the State Court Action], the Debtor's victory . . . would be a tremendous benefit to the Debtor's bankruptcy estate and all of the other creditors. (It is surprising that the Debtor does not relish this opportunity.)").

In sum, a jury trial in the Horne case, even as to a single defendant, could act as a bellwether of sorts in ascertaining more concretely what the Firm's claim liability actually is. The factor thus weighs in favor of abstention.[8]

---

(*See* Hornes' Reply to Stay Lift Mot. at 5-6; *see also id.* at 7 (adding that "[s]hould coverage under the Policy be denied based upon the failure of the Debtor and its counsel to provide timely notice of the State Court Action, than Plaintiffs would not receive any portion of the proceeds of the Policy if they are successful in this State Court Action.")).

[8] This is so despite the Firm and Mr. Humphreys' position that the claim estimation process always trumps the jury trial. They rely upon *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), to support that position.

14

Second, state law issues predominate over bankruptcy issues. There are no bankruptcy issues directly in play in the State Court Action, except perhaps as to the overlap of issues as between the Firm and the Hornes that appear in the recently filed claims in the main case. Respecting the difficulty or unsettled nature of the applicable state law, the Court has reviewed the Hornes' Pre-Trial Memorandum, attached as an exhibit to the remand motion. The issues there involved, even respecting some gateway choice-of-law determinations, cannot in any way be described as cut-and-dried.[9] The sheer volume of the motion practice in the State Court Action supports that view. Additionally, the case appears poised for a multi-week trial that has sprung from a discovery process that involved dozens of depositions and nine expert witnesses. Judge Alsop was ready to proceed to trial when removal occurred. The second and third factor thus weigh decisively in favor of abstention.

The fourth and fifth factors essentially cancel out. There is no related proceeding presently in state court. At the same time, however, there is no jurisdictional basis for this action aside from that granted by section 1334. The sixth factor is indeterminate. On the one hand, there is a degree of relatedness between the State Court Action and the main case. In addition to the claim overlapping, in part, with the claims pled against the Firm in state court, it appears that potential malpractice liability was at least one weighty factor in the Firm's decision to petition for relief. At the same time, however, there is a level of remoteness as well. The malpractice alleged by the Hornes is but one claim among possibly thousands against the Firm. Further, Mr. Humphreys is not a debtor. This factor is neutral.

---

The decision in *Piccinin* is distinguishable for a number of reasons, not the least of which is that the case involved "the trial of thousands of personal injury suits in courts throughout the land spread over an interminable period of time." *Id.* at 1012.

[9] The Firm and Mr. Humphreys contend that Virginia law applies exclusively or predominantly and renders remand or abstention inappropriate. The choice-of-law inquiry, however, appears substantially more involved than the minimal analysis devoted to it by the nonmovants.

The seventh and eighth factors weigh in favor of abstention. The State Court Action is not a core proceeding and has no core components to sever. The ninth factor weighs against abstention. There is no docket burden associated with the State Court Action. The tenth factor weighs in favor of remand and abstention. While the Firm and Mr. Humphreys availed themselves of a removal device sanctioned by Congress, it can hardly be said that the timing of the event — on the eve of the pretrial conference and trial in the State Court Action — leaves any doubt that one motivation for it was a desire to break free of Judge Alsop's reins. The eleventh factor is deemed neutral. The twelfth factor, however, weighs in favor of remand and abstention given Mr. Humphreys status as a defendant in the State Court Action.

The factoring analysis results in a different disposition for the claims as against the Firm and Mr. Humphreys. It is not an uncommon result to remand claims against the nondebtor while retaining jurisdiction over the claims against the debtor. *See In re Turner Grain Merch., Inc.*, 545 B.R. 261, 279 (Bankr. E.D. Ark. 2016) (noting "all of the factors taken as a whole weigh in favor of abstention and remand in this case, and allowing the Plaintiffs to proceed against the nondebtor defendants in state court while proceeding against the Debtor only through the bankruptcy claims process serves the principle of judicial economy."); *Hartwig v. Markley (In re Markley)*, 460 B.R. 793 (Bankr. D. Kan. 2011); *HGC, Inc. v. Heatherwood Holdings, LLC (In re Heatherwood Holdings, LLC)*, Nos. 09-00076 & 09-00004, 2009 Bankr. LEXIS 1932 (Bankr. N.D. Ala. June 22, 2009).

Liberty decries this approach, asserting that it may subject it to possibly having to defend two actions on the same facts. That is unlikely. It is more likely the case that some preclusion principle may obviate the need for duplicative proceedings. It is also the case that this disposition will permit Judge Alsop to pass on the coverage questions that have been presented in

the State Court Action. The wasting policy at issue in this case would be far more heavily impacted by the parties — before either the undersigned or a district judge by withdrawal of reference — re-plowing, planting, tending, and harvesting the field that long ago ripened for final adjudication by Judge Alsop and the jury.

The same preclusion doctrine that aids Liberty, however, motivates the Firm to object, asserting that it could be prejudiced by an inability to participate in or control the defense of the State Court Action while possibly being nevertheless bound by it when judgment is entered. *See, e.g.,* (Memo. in Resp. at 7 ("Debtor would be severely prejudiced by the issue preclusion consequences that could attach to a trial in which the Debtor is not required to, and does not, attend")). This concern is easily answered. First, the question of privity between Mr. Humphreys and the Firm would amount to a gateway issue before preclusion could be considered. As the non-movants' supplemental brief indicates, the disposition of that question is far from clear. Second, the Court may subsequently be asked to extend the automatic stay to Mr. Humphreys. If that relief is granted in some form, the preclusion concerns will never materialize. Third, at the other end of the spectrum, the Court may consider entertaining an appropriate stay lifting and remand stipulation between the parties to permit the Firm to participate in, and be bound by, the liability and damages verdict in the State Court Action, if any. Fourth, in the event the Firm declined that invitation, it is unlikely at best from a practical perspective that the Firm would play no role in the litigation and strategy developed by defense counsel in the State Court Action, especially inasmuch as Liberty is representing both the Firm and Mr. Humphreys at this point. One additional consideration also intervenes. The finality necessary to invoke a preclusion doctrine may not come to pass for many months, if not years. Judge Alsop will doubtless need to find a significant slot of time in his busy schedule, conclude pretrial development, conduct the trial, address post-trial

17

motions, and then give way to an appeal that might surely follow the trial court proceedings. (See Nonmovants' Supp. Br. at 14 ("the severe consequences of an erroneous state court judgment, in conjunction with the high stakes of the underlying claims for the Defendants, will require Mr. Humphreys to vigorously and meticulously defend his interests . . . in the state court and in the Supreme Court of Appeals of West Virginia.")). For at least these many reasons, then, the preclusion contentions thus lack the force necessary to materially influence the factoring analysis and the Court's overall exercise of its equitable discretion.

The Firm and Mr. Humphreys also contend that the potential judgment in the State Court Action could put at risk a significant asset of the estate, namely, the insurance proceeds available under the Policy. The proceeds from the Policy and perhaps other policies, however, seem to be the subject of serious and substantial controversy in the first place. First, the Court learned in the supplemental briefing that "the Policy has been revealed to be merely one of numerous primary and excess malpractice policies that were in place from 2002 to the present." (Pls.' Supp. Br. at 8). Second, it is far from certain that an indemnification obligation has, or will, attach under the Liberty policies that are at issue in the State Court Action. For example, the Hornes say: "Virginia's five-year limitations period for property damage claims under Va. Code § 8.01-243.B did not expire until July 2006, nearly a year after the Policy was cancelled. As a result, many of the Plaintiffs' claims for damages suffered as a result of the malpractice also fall outside of the Policy." (Reply at 2 (citation omitted); *see also* Horne's Supp. Br. at 8-9 (noting potentially other applicable policies but observing that, "For purposes of Plaintiffs' claims, these other policies are likely inapplicable, since the claims either fall outside of the coverage period or otherwise will not be covered because of the nature of the claims (i.e., Defendants' fraudulent conduct).")). Additionally, the Firm and Mr. Humphreys contend that "numerous other alleged

creditors . . . will also claim entitlement to the insurance proceeds." (Memo. in Oppos. to Stay Lift at 1). In the same breath, however, they assert that "a score of those other creditors are Movants' neighbors and *clients of their current lawyers*." (*Id.*). It seems unlikely that counsel under these circumstances would risk the potential conflict of placing the interests of one client over many others when a limited common fund is at stake.[10]

    Having considered the applicable factors, it is apparent that both discretionary abstention and equitable remand are appropriate as to the claims against Mr. Humphreys. It is, accordingly, **ORDERED** that the Hornes' motion to remand be, and hereby is, **GRANTED** to the extent of the claims pled against Mr. Humphreys and **DENIED** in all other respects. The claims against Mr. Humphreys are **REMANDED** to the Circuit Court of Kanawha County and Judge Alsop may proceed immediately with the adjudication of those claims. Based upon this disposition, it is further **ORDERED** that the motion to lift stay be, and hereby is, **DENIED** as moot.

---

[10] The AP Defendants also rely upon *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976), and presumably its prodigy, which provide that abstention is the exception and not the rule. The abstention there involved finds its roots in the narrowly circumscribed federal judicial abdication in favor of adjudication in another forum. The Court is aware that general abstention principles have at times found their way into opinions discussing the application of section 1334(c). Without addressing the suitability of the importation, the Court concludes the general abstention line is of little assistance presently.