

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>JAMES F. HUMPHREYS<br>& ASSOCIATES, L.C.<br><br>      Debtor. | CASE NO. 2:16-bk-20006<br><br>CHAPTER 11<br><br>JUDGE FRANK W. VOLK |
| IRA HORNE and<br>MAVIS HORNE,<br><br>      Plaintiffs,<br>v.<br><br>JAMES HUMPHREYS and<br>JAMES F. HUMPHREYS &<br>ASSOCIATES, L.C.,<br><br>      Defendants. | ADVERSARY PROCEEDING NO.<br>2:16-ap-2004 |

## <u>MEMORANDUM OPINION AND ORDER</u>
## <u>RESPECTING MOTIONS BY JAMES F. HUMPHREYS AND</u>
## <u>JAMES F. HUMPHREYS AND ASSOCIATES, LC,</u>
## <u>FOR STAY PENDING APPEAL, AND</u>
## <u>MOTION BY CREDITOR LIBERTY INSURANCE UNDERWRITERS, INC.</u>
## <u>TO AMEND OR ALTER</u>

    Pending are the motions (1) by James F. Humphreys ("Mr. Humphreys") and James F. Humphreys and Associates, LC (the "Firm")[1] for stay pending appeal of the July 15, 2016, memorandum opinion and order ("July Ruling" [Dckt. 65]), and creditor and *amici* Liberty Insurance Underwriters, Inc.'s ("Liberty"), motion to alter or amend the July Ruling, in part,

---

[1] Mr. Humphrey's motion is found at docket entry 542 in the main case and the Firm motions are found at docket entry 515 in main case and at docket entry 52 in the adversary proceeding

insofar as it remanded to the Circuit Court of Kanawha County the claims pled against Mr. Humphreys [Dckt. 67 in the adversary proceeding].

On August 24, 2016, the Court heard argument on the motions. The matters are ready for adjudication. The discussion that follows assumes a familiarity with the factual and legal discussion found in the July Ruling.

## I.

A.    **Mr. Humphrey's and the Firm's Motions to Stay Pending Appeal**

### 1. Governing Standard

Federal Rule of Bankruptcy Procedure 8007 authorizes motions for stay pending appeal. The Rule provides that, "[A] party must move first in the bankruptcy court for the following relief: . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). The requested stay is an extraordinary remedy and the movant's burden is consequently quite profound. *See Winston-Salem/Forsyth Cty. Bd. of Ed. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., writing as single Circuit Justice) (noting "the heavy burden for making out a case for such extraordinary relief . . . ."). In recent times, the Supreme Court has elaborated upon why stay relief is well outside the mine run of cases in which appellate review is sought:

> A stay is an "intrusion into the ordinary processes of administration and judicial review," *Virginia Petroleum Jobbers Assn. v. Federal Power Comm'n*, 259 F.2d 921, 925 (C.A.D.C. 1958) (*per curiam*), and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant," *Virginian R. Co. v. United States*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926).

*Nken v. Holder*, 556 U.S. 418, 427 (2009). The decision in *Nken* sets forth the traditional four factors that govern the analysis:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

*Id.* at 426. Factors one and two "are the most critical." *Id.* at 434.

### 2. The Strong Showing of Likelihood of Success

Mr. Humphreys and the Firm assert they are "likely to prevail on appeal based on at least three independent grounds." (*See*, *e.g.*, Firm Mot. at 6). For their first ground, they assert the Court erred in leaving to the assigned judicial officer on the Circuit Court of Kanawha County the question of insurance coverage for the Hornes' case. They contend that controversy is insusceptible to adjudication there inasmuch as it ostensibly "affects the liquidation of the assets of the estate and . . . [the Firm's] ability to recover under the policy for the benefit of its creditors, including the Homes." (*See*, *e.g.*, Firm Mot. at 6 (stating also "That determination must be made by this Court with jurisdiction over core proceedings and should not be left to a state court with no context regarding the effect of that determination on JFH&A's bankruptcy."). This alleged error is now moot given developments that followed the July Ruling. In sum, the insurance coverage issues are now pending before an Article III judge who enjoys plenary bankruptcy authority.[2]

---

[2] Those post-July Ruling developments have immeasurably fortified the Court's permissive abstention analysis. First, on July 22, 2016, Mr. Humphreys and the Firm instituted a declaratory judgment action in the District Court which appears designed to settle all insurance coverage disputes. Second, on August 3, 2016, a host of additional civil actions were filed against Mr.

The second ground is that "the Court lacked the power to do anything other than recommend remand . . . ." (*See*, *e.g.*, Firm Mot. at 7). Mr. Humphreys and the Firm elaborate upon this ground as follows:

> [T]he Hornes never expressly consented to having this Court enter a final judgment. Indeed, JFH&A's filing of the motion to withdraw the reference is nothing less than a recognition of the Homes' refusal to allow this Court to enter a final judgment in the State Court Action. In short, the State Court Action is a noncore proceeding and the Homes never consented to final adjudication by the bankruptcy court.

(*See*, *e.g.*, Firm Mot. at 7). The contention is errant. A remand order is not -- as Mr. Humphreys and the Firm cast it -- "a final judgment." It is quite the opposite. *See*, *e.g.*, *In re Wade*, 500 B.R. 896, 903 (W.D. Tenn 2013)(a final judgment in bankruptcy is one which "disposes of the whole subject, gives all relief contemplated, provides reasonable completeness . . . and leaves nothing to be done" but execution); *In re McCoy*, 260 B.R. 863, 867 (E.D. Ill. 2001) (a "final judgment" is one that "ends the litigation and leaves nothing for the court to do but execute judgment" and noting further that, in order to be "final" in the context of bankruptcy, "an order need not resolve all issues raised by debtor's bankruptcy, but must completely resolve all issues pertaining to a discrete claim, including issue as to proper relief"). In contrast to the finality of a court's judgment, a remand motion typically seeks to return the case to the state court on jurisdictional grounds. Judge Wilkinson observed as follows concerning the process-centered, often

---

Humphreys in the circuit court by plaintiffs with claims similar to those prosecuted here by the Hornes ("the malpractice and fraud claims"). Third, Liberty has noticed its intention to withdraw from the circuit court its request for declaratory relief on the coverage issues, thereby removing all such issues from the state tribunal. Fourth, Liberty has answered and filed a third-party complaint in the District Court declaratory action seeking broad insurance coverage rulings.

    The upshot of these developments is that apparently all of the malpractice and fraud claims against Mr. Humphreys have now been filed and, at least in part, may be susceptible to consolidated and coordinated treatment. Second, Mr. Humphreys and the Firm will receive from an Article III judge a full, final and global adjudication of the coverage issues related to the malpractice and fraud claims. Third, neither Mr. Humphreys, the Firm, nor Liberty will suffer the potential of conflicting rulings on the malpractice and fraud claims or coverage issues.

jurisdictional, remand device: "Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

Although permissive abstention is not a doctrine of jurisdictional dimension, it is a quintessential means for expeditiously directing litigants to the most appropriate forum. Further, contrary to what Mr. Humphreys and the Firm suggest, permissive abstention is also a matter over which the bankruptcy court may enter a final order (as opposed to a final judgment). Federal Rule of Bankruptcy Procedure 5011(b) provides that, "A motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be governed by Rule 9014 . . . ." Fed. R. Bankr. Proc. 9014(b). This means a dispute arising from such a motion qualifies as a "contested matter." As one commentator has additionally noted, "This contemplates that bankruptcy judges will treat abstention motions as core proceedings . . . ." 1 Bankruptcy Desk Guide § 7:21 (2016 elec.) (observing that, "[S]ince 1991 the bankruptcy court has been authorized to rule directly on motions to abstain under 28 U.S.C.A. § 1334(c) and issue final orders concerning abstention."); 1 Hon. Joan N. Feeney, *Bankruptcy Law Manual* § 2:16 (5th ed. 2016) ("The motion to abstain is a contested matter and a core proceeding, and the bankruptcy judge is thus not required to issue a report and recommendation regarding its decision on abstention.").

Abstention matters are routinely, and finally, handled by bankruptcy courts. This is perhaps why the authorities are stacked so decisively against Mr. Humphreys and the Firm on the issue. *See*, *e.g.*, *Rachmale v. Conese*, 515 B.R. 567, 568 (Bankr. E.D. Mich. 2014); *Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 844 (Bankr. S. D. Ohio 2011) ("Motions seeking dismissal based on an alleged lack of subject-matter jurisdiction are core proceedings . . . . So too are motions seeking abstention . . . . Accordingly, the Court has the authority to enter an order on the Motion[]

without submitting proposed findings of fact and conclusions of law to the District Court."); *In re Hearthside Baking Co., Inc.*, 391 B.R. 807, 811 (Bankr. N.D. Ill. 2008) ("A motion to abstain and remand a non-core 'related to' proceeding previously removed to a bankruptcy court is a matter that, by its very nature, could exist only in connection with a bankruptcy case, and is a matter over which a bankruptcy court exercises core jurisdiction, with the authority to enter final orders therein."); *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 376 (Bankr. E.D. Ark. 2003) (holding that motions for abstention, remand and transfer of venue are core proceedings and that the court has the authority to enter final orders on such motions).

In sum, there is little to no likelihood that Mr. Humphreys and the Firm will succeed on this second assignment of error.

The third alleged error is that the Court was mistaken in some of its factual observations supporting the abstention analysis. For example, Mr. Humphreys and the Firm assert that the Court speculated remand could result in a verdict exonerating Mr. Humphreys. They also contend that the Court lost sight of the wasting nature of the Liberty policy, a fact the Court explicitly referenced in the July Ruling. The Firm and Mr. Humphreys nevertheless observe as follows:

> Moreover, because the Liberty policy is a "defense within limits policy", every dollar spent defending JFH decreases the funds available to the estate. As a result, even if JFH prevails following a protracted trial and appeals in the Supreme Court of Appeals of West Virginia and defeats Liberty's efforts to evade its coverage obligations, there is no guarantee how much money will be left to compensate claimants.

(*See*, *e.g.*, Firm Mot. at 8). The Court, again, is well aware of the wasting nature of the Liberty policy. Indeed, it is a matter addressed explicitly in a companion decision entered today in *James F. Humphreys & Associates, L.C.*, No. 2:16-ap-2007 (Bankr. S.D. W. Va. Feb. 8, 2016). By virtue of a disclosure made during argument by the Firm's counsel, it further now appears that the Liberty

6

policy is but one of three applicable sources of coverage. In light of this disclosure, there appears to be even more certainty concerning potential coverage, and money for defense costs, presently than at the time of the July Ruling. In any event, the order in the companion case resolves any concerns presently expressed concerning the diminution of the wasting policy.

Having reviewed the additional alleged factual errors identified by Mr. Humphreys and the Firm, it is plain that none warrant reversal, much less a high likelihood of reversal. This factor weighs decisively against the requested stay.

### 3. The Irreparable Harm to Mr. Humphreys and the Firm

As noted, the first two stay factors are the most critical and the burden imposed upon Mr. Humphreys and the Firm is quite onerous. Nevertheless, the following represents the entirety of their showing on this second factor:

> In the absence of a stay, the State Court Action will be remanded to the circuit court, which would irreparably harm JFH&A in at least three ways. First, to the extent this Court lacks the authority to enter a final judgment in this proceeding without consent, remand would deprive . . . JFH&A of its constitutional right to an Article III judge. Second, remand would almost certainly result in the immediate resumption of heated and protracted litigation in the circuit court of extraneous issues, which would rapidly erode the limits of liability available under the Liberty policy. Finally, as discussed above, because JFH&A believes that determination of coverage under the Liberty policy is a core proceeding, this Court is turning over to the circuit court a fundamental bankruptcy matter concerning property of JFH&A's bankruptcy estate. Moreover, the reckless tactics and assertions made by the Hornes previously could result in an unfair and improper coverage determination that would prejudice JFH&A and its claimants.

(*See*, *e.g.*, Firm Mot. at 11). Respecting the first alleged harm, as noted, there was no "final judgment" entered in the July Ruling and no constitutional right thus impaired. Respecting the second alleged harm, and despite protestations otherwise, the Horne matter is ready for trial in the circuit court, and the jury findings may aid whatever adjudicatory process is necessary in this

Court. Further, as noted, the Liberty policy is no longer the only source of coverage in the case. Finally, to the extent one views the Liberty policy as estate property, the declarations concerning its applicability and reach are now safely in the Article III breast.

In sum, none of the alleged sources of irreparable harm bear any weight. This factor thus also weighs heavily against granting the requested stay. Inasmuch as the two factors central to the analysis weigh decisively against the movants, there is no need to conduct the remainder of the analysis. It is, accordingly, **ORDERED** that Mr. Humphrey's motion at docket entry 542 in the main case and the Firm motions at docket entries 515 in the main case and 52 in the adversary proceeding be, and hereby are, **DENIED**.

**B.      Liberty's Motion to Alter or Amend the July Ruling**

In its motion to alter or amend the July Ruling, Liberty requests that the Court correct three "findings" it asserts are factually inaccurate.[3] (Liberty Mot. at 1). The three challenged findings are as follows:

That Liberty joined the motion to remand;

That Liberty is well-steeped in the defense and progress of the State Court Action; and

Liberty is representing both the firm and Mr. Humphreys.

Respecting Liberty's putative joinder in the motion to remand, Liberty concedes "that its initial response [to the remand motion] did not clearly articulate . . . [its] position . . . ." (Liberty Mot. at 2). That response was entitled as follows: "LIBERTY INSURANCE

---

[3] In their response to Liberty's motion, Mr. Humphreys and the Firm assert that "If the . . . [July Ruling] is a final order on appeal, then this Court lacks jurisdiction to entertain the Motion to Amend until the District Court disposes of the pending appeals of the Remand Order." (Resp. at 3). Counsel are referred to Rule 8002(b) and the interpretive decisions to which it gives rise.

8

UNDERWRITERS INC.'S RESPONSE IN OPPOSITION TO DEBTOR'S NOTICE OF REMOVAL AND *JOINDER IN PART TO IRA CALVARY HORNE AND MAVIS HORNE'S MOTION TO REMAND*." (Liberty Resp. at 1 (emphasis added)). Its response also asserts as follows: "LIUI further joins Ira Calvary Horne and Mavis Horne's ('Plaintiffs') motion to remand *Ira Calvary Horne and Mavis Horne v. James F. Humphreys, individually, and James F. Humphreys and Associates, LC*, Civil Action No., 14-C-1684 in the Circuit Court of Kanawha County, West Virginia ('State Court Action') back to the Circuit Court of Kanawha County, West Virginia for final adjudication." (*Id.* at 1). To the extent the Court omitted that Liberty did not desire to permit the action in the circuit court to proceed against Mr. Humphreys alone, that elaboration is now added.[4] The added information, however, in no way affects the integrity of the July Ruling.

Respecting the additional two matters, the Court observes that, to the extent any factual observations found in the July Ruling were intended as "findings," such "findings" are not restricted to that appearing explicitly in the record. It is instead the case that permissible "findings of fact -- include[e] those based on credibility determinations, on physical and documentary

---

[4] The Court need not address the accuracy of the following representation appearing in the August 12, 2016, brief filed by the Hornes:

> Within two weeks of the removal of the State Court action, Liberty's Response opposed the Notice of Removal filed by the Debtor and Mr. Humphreys and joined in the Hornes' Motion to Remand. (A.P. No. 2:16-ap-02004, Doc. 11.) Having been thoroughly castigated by the Debtor and Mr. Humphreys for its Response (A.P. No. 2:16-ap-02004, Doc. 20), Liberty beat a hasty retreat in an Amended Response and asserted that it was merely taking "no position with regard to the proper forum for the claims at issue herein other than to maintain that matters should be resolved unitarily so as to avoid the potential for inconsistent judgment." (A.P. No. 2:16-ap-02004, Doc. 19, at 1.)

(Horne Br. at 3).

9

evidence, and *on inferences from other facts.*" *Thibodeaux v. Olivier*, 819 F.2d 550, 552 (5th Cir. 1987) (quoted in *In re Tusa-Expo Holdings, Inc.*, 811 F.3d 786, 789 n.1 (5th Cir. 2016)); *see also* 3 Bankruptcy Desk Guide § 37:19 (2016) ("Inferences drawn from facts are also subject to the clearly erroneous standard of review under former Bankruptcy Rule 8013.")

With respect in particular to the extent Liberty is well-steeped in the defense and progress of the State Court Action, the Court noted in the July Ruling the following representation by Mr. Humphreys and the Firm: "As required by the insurance policy issued by [Liberty] . . . [Mr. Humphreys and the Firm] closely coordinated their defense strategy with" Liberty. (July Ruling at 6 n. 4). Inasmuch as the challenged "finding" was tethered to this undisputed matter of coordination, there is no basis to revisit its accuracy. The same is true of the final challenged "finding," namely, that Liberty is representing both Mr. Humphreys and the Firm. It is the case that Mr. Humphreys and the Firm have retained Bailey & Glasser, P.C. to formally represent their interests. It is also the case, as Liberty concedes, that Liberty "agreed to permit Defendants to continue using the legal services of Bailey & Glasser, L.P., and to provide compensation for defense costs incurred in accordance with the terms of the agreement to do so." (Memo. in Supp. at 5). The Court's observation in the July Ruling was meant simply to reflect that Liberty is providing a defense to both Mr. Humphreys and the Firm. That observation is undisputed and unassailable. There is no need to revisit the matter beyond this elaboration.

It is, accordingly, **ORDERED** that Liberty's motion to alter or amend be, and hereby is, **GRANTED** to the extent set forth above and otherwise **DENIED** as to its residue.

**III.**

Having considering the parties' respective contentions, and based upon the foregoing discussion, it is hereby **ORDERED** as follows:

1. That Mr. Humphrey's motion at docket entry 542 in the main case and the Firm motions at docket entries 515 in the main case and 52 in the adversary proceeding be, and hereby are **DENIED**; and

2. That Liberty's motion to alter or amend be, and hereby is, **GRANTED** to the extent set forth above and otherwise **DENIED** as to its residue.

The Clerk is directed to send a copy of this order to all counsel and parties entitled to notice.